The next case this morning is 522-0772, Knight v. Knight. Arguing for the appellant is Franklin Byers II. Arguing for the appealee is Stephanie Hall. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Couple things before we get started. I think, Ms. Knight, you need to make sure you're muted as the non-participant. I don't have the ability to mute her, so I don't think she actually has audio. She may be coming in now for audio. There we go. Thank you. And, counsel, I know this was kind of last minute, but we appreciate your willingness to do this via Zoom with the weather rolling in. I don't know what it's like up in your neck of the woods, but it's supposed to get pretty nasty down here where I am, so we do appreciate that. Mr. Byers, if you're ready, then go right ahead. All right, Your Honor, thank you very much. It's two degrees here, for the record. May it please the court and counsel. We'll never know the relationship between Judge Correale and his former boss, Judge McCarthy. However, we do know that days before he retired, Judge Correale ignored the report and the supplemental report presented by Judge McCarthy without any factual findings telling this court why. Judge McCarthy, the former head of the Merrill Division in Macon County, conducted a very thorough investigation. She interviewed the parties multiple times. She visited the parties in their homes on multiple occasions. She interviewed the counselors, the teachers at school, the witnesses named by the parties, the DCFS workers, the children's grandmother, the babysitter for the children, and she interviewed the children multiple times over the course of time, more than a year. Her time records reflect that she spent more hours during her investigation time than the time consumed by the trial in front of Judge Correale. Yet this court does not have the benefit of Judge Correale's reasoning as to why he ignored Judge McCarthy's findings and recommendation. The case law cited in the brief reflects that the trial court is not bound to follow the recommendations of the GAL, but the appellant, Raquel, asserts that this court should instruct the trial courts of the Fifth District to make specific findings when ignoring such a complete GAL recommendation so that this court can provide a more meaningful review. In sports, when one player fouls another player, and the second player reacts to that foul, it's often the actions of the first player are unpunished, and the actions of the second player draw the penalty. We see that all the time in sports. Comparably, in this case, the mental, verbal, and physical abuse by Michael, player one, has no consequences. The response to that abuse by Raquel, her PTSD, and the resulting hoarding has determined many of the course of events. It's clear that that impacted this case. The record is clear that Raquel did not hoard before her marriage to Michael and does not hoard after her separation from Michael. The record is clear that her PTSD manifested by hoarding was the result of abuse by Michael. Raquel's reaction to abuse was the basis of the DCFS finding indicating Raquel and certainly played an important role in Judge Correale's decision. In sports, not calling a foul on player one is not fair, in this case, not recognizing the underlying source of Raquel's response to abuse and incorporating that into the judgment by following Judge McCarthy's recommendation is also not fair. It defies common sense to say that only Raquel was responsible for the condition of the home which prompted DCFS involvement. Michael certainly bears equal responsibility for the condition of the home. Michael had the ability to clean the home as he did when he was under the gun by DCFS. Two people, Michael and Raquel, both shared responsibility for the condition in which the children were living when DCFS intervened. Indeed, the record reflects that the condition may be more the fault of Michael. Judge McCarthy reported in her last visit to Raquel's home that it was spick and span clean. When Judge McCarthy visited Michael's home days before the trial, it was filled with garbage and junk. It was in the same relative condition as when first visited by DCFS, except with the addition now of animal feces. The pictures and evidence E116-137 taken by Judge McCarthy reflect this. The house became in this deplorable condition after Michael had cleaned it to the satisfaction of DCFS and when Raquel was not living there. Obviously, Raquel is not the only person who created the environment found injurious to the children by DCFS. However, life is not fair, and we have to deal with the present as it is. So I'll turn to the issues that we have been raising. First is the dismissal of Raquel's petition for travel clarification. This court held this appeal in advance for the specific purpose of allowing the trial court to enter orders clarifying the visitation orders that it entered. Raquel's request for clarification was dismissed by the newly appointed Judge Bowers, not newly appointed as a judge, but newly appointed in this case. And she ruled that she did not have jurisdiction to decide the issue, which was this court held in advance specifically so that she could decide the issue. So we have filed prior counsel to me becoming involved, filed with the court, a proof of what would have been presented at the trial court had they been allowed to proceed on the clarification of that order. That offer of proof was not objected to by Michael. He didn't submit his own offer of proof. He did not move to strike the offer of proof. He did not object to any of the statements of fact contained within the offer of proof. So this offer of proof is the sole record before this court. And I suggest that this court can use that offer of proof to decide the issue. It's a fairly minor issue in the scope of a total visitation schedule to allow this, to allow the children to accompany Raquel either out of state to visit her cousin or to her family's or her mother's side in Mexico. Let me stop you there, counsel, if I may. The underlying order that was ultimately entered, I believe it was entered on October 25th. Is that correct? And it's not true. And then supplemented with the judgment. Did that underlying order, if I'm not correct, that order didn't address any type of travel arrangements or anything like that. Is that correct? That is true, although that was raised before the court entered those orders and all the position statements filed by Raquel and was requested by Raquel to have an order entered. And that's why we wanted the clarification. All right. And with regards to that order, that order doesn't make a finding as to the parenting allocation for religion. Is that correct? That is true. So there is essentially no judgment as to religion, correct? That is true. All right. And it's my understanding, according to the statute, that the court shall allocate decision making, correct? As to all of the factors. That is true. All right. Further, I think that the statute specifically discusses religion and says that there are specific findings that must be made with regards to religion. Is that correct? Yes, Your Honor. All right. Were those findings made by the trial court, either in the transcript or in the order? No.  All right. And what is your position then on the decision as to the court's decision as to religion then? Your Honor, the evidence before the court was that my client routinely took the children to church with her. And both before the party separated and after the party separated during the term that this court or excuse me, this case was before the trial court. We are requesting and have requested at the trial court level that she be awarded the decision making authority for religion. And are you asking and are you asking for joint decision making or sole decision making? And for which factor specifically? Your Honor, we have always put forth both in the preach in the cases of excuse me, in the trial court and here that it should be joint. It should be joint. We think the parties don't communicate, except through texts back and forth, according to the record. And I think that joint decision making can work when parties either text each other or, as Judge McCarthy recommended, through the portal communicated with each other. So it's our position that joint decision making authority should be the order of the court. All right. And does the order of the court from October 25th? It's my I've got the order in front of me. There is no specific finding as to any specific factor. Is that accurate? The best interest factors? There is the order speaks for itself, and you're absolutely right in the reading of the order. Okay, but doesn't the order specifically mentioned that they that the order that they reviewed the reports, the exhibits and the arguments. The order reflects that it it it had considered that in the opening paragraph of the judgment. Your Honor. Were there any oral pronouncements in the transcript council? Related to decision making? There were. For one, Judge Correale orally announced that Caleb did not have to participate in visitation. That that that the that the whether or not Raquel wanted to have counseling was up to her, but she had to do it on her days of visitation, which would be on the weekends. So, yeah, there are some things that the judge entered entered orally that we've included in our brief and in our presentation, but we're not actually in written written order signed by the court. So, they were never made a part of the formal order, then that's correct. That is my understanding. Yes, Your Honor from the reading. All right. So, in terms of enforcement, then how is the order enforced without these type of provisions listed out? My experience is that it's not enforceable. My experience is that most trial courts say if it's not in the written order, it's not enforceable. I don't know if there's case law that says that. That's just my experience. I, I don't know if there's a case out there that says you can go ahead and enforce oral pronouncements that are not in the written order. I apologize to the court. I can look for that and send whatever case law there might be, but I'm not aware of any. I'm sorry. How far apart do these people live? These people live both within the same school district. They're not very far apart at all. The school district is kind of a rural school district. So, it's, it's not compact like an inner city. But as far as travel time, I can't tell you the exact travel time, but it's not, it's not that far. Do they still exchange the children at a neutral site in Decatur? I'm unaware of how they currently exchange the children, Your Honor. I cannot answer that question at this time. I can ask my client and then submit an additional answer, but I cannot answer that at this point in time because I do not know. It seems that there was a question as to the living arrangements with Michael. Do you know what those are? Do the children each have their own bed? As of the last report and record, Judge McCarthy indicated that they do not all three have their own bedrooms, that Joshua and Caleb share the same room. Does anybody sleep in a chair still? I don't know about still because that would imply the present, but I do know in the record it was that Michael sleeps in a chair. He asserts it because of injury to his shoulder and that oftentimes the children sleep in the living room. So, I can't tell you what currently they are doing. I can only tell you what the record showed. Okay, thank you. One more question, Mr. Byers. With relation to the petition to allow travel, the time that that petition was heard was during the period of time that the case was taken out of abeyance. Is that correct? No, it was still in abeyance. It went out of abeyance after I filed the report saying that everything is now completed at the trial level. That was after the dismissal of the petition for travel. All right. In this case, Raquel asserts that the failure to follow the recommendations of Judge McCarthy was against the manifest weight of the evidence and she requests the relief that is stated in her briefs. Thank you. Thank you, Counsel. Before we move on to Ms. Hall, Justices, do you have any questions for Mr. Byers? No further questions. Thank you. And obviously, Mr. Byers, you're going to have your rebuttal time. Ms. Hall, if you'd unmute yourself and go ahead and proceed. Thank you. May it please the Court and Counsel. With regard to some of the arguments made by Counsel here at the beginning of his argument here this morning, specifically with regard to the trial court's failure to follow the exact or all of the exact recommendations made by the guardian ad litem in this matter, I would direct the court's attention to In Re Marriage of Katzap, which states that the court is not required to make specific findings and certainly is not required to follow the recommendations of the guardian ad litem. And that's also confirmed in In Re Marriage of Virgin, stating that the court is not bound by the recommendation of a guardian ad litem. In fact, in our brief, we cited no less than five cases confirming that it is not an abuse of discretion for the trial court to enter a ruling contrary to the recommendation of the guardian ad litem. And those cases are In Re Marriage of Wyckoff, Taylor v. Starkey, In Re R.R., In Re Barber, and Roth v. Roth. And we noted all of those in our brief. Ms. Wall? Yes, Judge. Why not allow a mother the right to know what's going on with their children at school? Well, Judge, with regard to the contact with the schools, there is nothing in the court's order prohibiting Raquel from communication with the schools. At a future date, if Raquel was able to present credible evidence that Michael was blocking her ability to communicate with the children's educators or daycare providers and said actions were causing some type of harm, then she could certainly file a motion to modify or, if applicable, even a contempt petition. But there is nothing in the… Your statement says that she has to show harm or some blocking by Michael. My question is, why do we have to have that? Why can't a mother know what's going on with her children at school? Judge, I don't believe there's any reason… …to communicate with her unless there's a court order that blocks that. I'm sorry, I didn't hear the last part of it. I said the schools will not allow that unless there's a court order that requires them to do that. I don't see the judge's reasoning in that. Judge, I don't believe that the order prohibits Raquel from communicating with the schools or prohibits, certainly, the schools from communicating with Raquel. Although Michael was awarded decision-making, there is no order that I am aware of in the trial court that prohibits any communication between Raquel and these schools. Well, your client would not object to that. I'm not aware of any objection by my client to Raquel having communications with the children's school. I think that certainly the school is free to communicate with a parent of one of the students who attend school. And a parent is certainly free to communicate with educators unless there is an order prohibiting said communication. But didn't the GAL in one of her reports indicate that your client was making it difficult or hindering the mother's ability to speak with the school? The GAL did indicate that at some point years earlier, before the trial in this case, there was an allegation by Raquel that Michael was interfering with her ability to communicate with the schools. However, I believe at that point they were operating under a temporary order and there were actually restrictions placed upon Raquel's parenting time at the time that this behavior was going on. So I believe that the facts were rather different at the time that may have been happening. But Ms. Hall, you agree that your client was awarded sole decision-making for education, medical, and extracurricular activities, correct? That is correct. And the order is in fact silent as to, there is no parenting plan in place as to communication, as to communication with the school. It's even silent as to religious decision-making. Is that all correct? That is all correct. All right. So how would the school know, back to Justice Cates' question, how would the school know that they're allowed to speak to mom if in fact father is awarded sole decision-making? Because there's no order prohibiting mom's communication with the school. I'm not aware of any case or any case law stating that a parent is prohibited from speaking with the child's educators unless there's an order specifically allowing said communication. I believe the opposite is true, in fact, that parents have the right to communicate with their children's educators unless there is a specific prohibition on them doing that. And that's why, but that's why it's generally included in a parenting plan, correct? Those things are outlined in court orders and parenting plans, correct? When parenting plans are certainly prepared by counsel with agreement of the parties, yes, that is language that is typically included for, well, for purposes of making it clear to everyone what the ground rules are. When cases go to trial and are decided upon by a judge at the trial court level, we do not always get the level of precise detail that perhaps you would get in a fully negotiated 12 to 13 page parenting plan. But you agree, though, that a parenting plan is required, whether it's through the court or agreement by the parties? Per statute, yes. All right. Also, in addition to that religion, I addressed that before with counsel. I don't believe that religion decision, religious decision making has been assigned pursuant to statute. Does that agree? Do you agree with that statement? I do agree that religious decision making was not assigned in the judgment of dissolution of marriage. That is correct. And what's your client's position on religious decision making? Judge, when it comes to religious decision making, my client would object to Raquel being allocated certainly sole decision making with regard to religion. And I would note that in the statute where it states the court shall allocate decision making, it does subject the allocation of religious decision making to a series of provisions. And it states the court shall not allocate any aspect of the child's religious upbringing if it determines that the parents do not or did not have an express or implied agreement for such religious upbringing or that there is insufficient evidence to demonstrate a course of conduct. And with regard to that specific issue, I would note that there are cases that deal with and to the extent that the specific issue of religious decision making, I don't believe was significantly raised in the appellant's brief or in the reply brief. But I do have some case law on that specific issue. In In Re Marriage of Zuko, which is 150 Ill App 3rd 146, which is a case from the Fifth District, the court determined that a decision premised on the belief that active participation in organized religion should be given preference over a more passive form of religious faith in custody matters cannot be condoned by the court. And then when taking any action regarding religious practice, including in matters involving the allocation of parental responsibilities, the court has to apply the three part test established in Lemon v. Kersman, which is a Supreme Court case from 1971 with the site 403 U.S. 602. And that three part test is that the action must have a secular purpose. Its principle or primary effect may neither advance nor inhibit religion and action may not foster an excessive entanglement with religion. So. Given the Council, where can you direct me? I mean, there's nowhere in the order in the transcript that I found where any of that was addressed. Would you agree? The specific issue of religious decision making was not addressed in the judgment or in the order of the court, and it was not specifically focused on at trial other than. The general theme of the parents' religious beliefs was a through line through the trial, and there was an allegation or assertation by my client at the trial level that mom's rather extreme, that Raquel's rather extreme religious beliefs informed many of her parenting decisions that he believed were not in the children's best interest, such as striking them with a rock. And questioning and interrogating specifically their daughter about her dress, preferring that she wear long dresses and things of that nature. It also informed her decision or desire to homeschool the children. And clearly, the record from trial and the record on appeal demonstrates that children were not properly being educated while being homeschooled by Raquel. The through line of religion was present there, and it is clear from the record that the parents do not have really an agreement with regard to religious upbringing if it involves such an extreme religious bent that results in significant corporal punishment or homeschooling the way it was happening before. You know, you would think that if the religious bent, as you call it, was so severe that the court would have entered an order giving that decision making authority to your client. Perhaps so, Judge. I cannot speak to the trial court specific reasoning in declining to order religious decision making or allocate religious decision making between the parties. Certainly, there is nothing prohibiting either parent currently from taking the children to their desired church during their allocated parenting time and Raquel does have parenting time every other Sunday and is able to take the church, or I'm sorry, the children to church during her parenting time on her Sundays. So you don't expect this court to fill in the blanks on the fact finding that needs to be made as it relates to the religious preference decision making. Do you? I certainly do not judge that is not within the purview of this court that is within the purview of the trial court. The fact that you've described all of the detail that needs to be considered by the trial court, would you agree that as to religious decision making that this case needs to go back? I believe that if this court were to order that this case be remanded to the trial court, specifically for the purpose of allocating religious decision making, that would not be an incorrect decision, Judge. Okay, I have a question regarding the court's order as to Caleb. Yes, Judge. I found it very unusual that you allow a child to choose whether to visit his mother or not. Judge, it is unusual, although not necessarily unheard of in situations like this family where there is one child who has expressed such a strong preference against one parent. Why not get that child to counseling? Why is your client objecting to counseling? I believe the court ordered that the children continue with their current counselors that were already or the current counselor that was identified at trial. I don't recall the name of that counselor, but there was testimony presented at trial that the children were seeing an individual counselor. But Judge Coryell declined to require the children participate in family counseling with Raquel. What is your client's position on that, trying to get Caleb some counseling to get back with his mother? Did he object to that? Judge, my client did object to that at the trial court level. His position was that was not in Caleb's best interest at that point. Okay. Really quickly, Counsel, the petition to allow travel, the order does not address things like the passport and the winter break and as such. Those matters have not been resolved. Is that correct? That's correct, Judge. The order is silent as to that, which is why we believe that the petition to allow travel does not constitute a minor modification that is kind of incidental or ancillary. The petition to allow travel would have required, specifically with regard to the international issue, it would have required a specific order requiring the parties to cooperate in obtaining passports for the minor children, which is outside the scope of a minor modification. And in fact, that issue was brought up during the hearing on the Raquel's motion to, I'm sorry, on the motion to dismiss on January 3rd of 2024. And the trial judge specifically noted that the relief requested by Raquel was not a minor modification. And the transcript of the hearing indicates the court correctly determined that the petition should be dismissed. And that's in the supplemental record, sub R446 to 447. So even if this court were to determine that the petition to allow travel should not have been dismissed for lack of jurisdiction, certainly the dismissal was proper because the petition to allow travel really was a motion to modify, even if it was styled as something different and a substantial change in circumstances was not properly alleged or pled. I'll give you just a short time to finish up if you wish, Ms. Hall. Judge, in brief closing, I will direct the court's attention to in remarriage of Lee. The fact that a party is unhappy with the disposition does not mean that the disposition was unfair. It is clear that Raquel disagrees with the trial court's order. However, that does not mean that the trial court's ruling was against the manifest weight of the evidence or an abuse of discretion. Thank you. Thank you, counsel. Before we let Ms. Hall go, Justice Scholar or Justice Cage, do you have any questions? No more questions. Thank you. All right. Thank you. Mr. Byers, if you're ready for your rebuttal, if you'd unmute yourself and go right ahead. Thank you. I'm going to just touch on a few things that counsel said. First off, we acknowledge that a trial court is not required to follow the guardian ad litem's recommendations. We've put that forth in our brief, and I recognize the cases cited by counsel. What we are suggesting to this court is that in order for an appellate court to review what and make a meaningful decision as to what the reasons were that the trial court rejected the guardian ad litem recommendations, that there should be some findings. And I appreciate that that's a change or an alter in the current existing law, but I think that's the type of thing that really needs to be done so that this court can have the benefit of what the trial court was doing. And I do recognize her cases. I'm just suggesting that those cases need to be further enhanced with new rules by this court in this case. Now, talking about communication with the school, the evidence is clear that Michael blocked my client from getting into the school portal. He admitted that. He also admitted that he talked to the teachers, and my client testified that the teachers reported that Michael talked to him. So she definitely was excluded. The next part that I want to bring up is that the discussion by counsel about homeschooling. Homeschooling was a joint decision between these parties. That's pretty much uncontroverted in the record that it was a joint decision. So it's true that my client was the one who is conducting the education, but the fact of a homeschool was a joint decision and can't not be the sole responsibility of my client. And then talk about the religion. The record is replete that my client was actively taking the children to church with her. And in fact, that's one of the original reasons that she had visitation on Sundays. I believe that's reflected in the record. It's also reflected in the record that Michael did not take the children to church. So there was one party who was, there was one party who wasn't, and I don't know if in Michael's thinking that that made it extreme, but I don't believe that simply taking the children to church on Sunday could be classified as extreme. Now, as far as Caleb and the counseling, Caleb turns 18 August of this year. He turns 18 this August. There's only a few months left that this court can even impact his life. And we hope that the court does by entering in order if you send it back to the trial court. By the time we get a hearing on that he'll be 18 and he'll be on the purview of any court. Rachel is going to be 16 in May. There's not that much time left with her either. As we set forth in our brief time is one of the most important things that go on between a parent and child and this alienation of my client by by Michael has dramatically impacted the children. She doesn't know when the school functions are, she can't get into the portals, she can't. All of these things are are really crying out for some intervention by this court before time runs out. And the kids need counseling. There's no question about it, whatever counseling that Caleb had before the trial was minimal as according to the record as it stands. So, and all of the children, whatever counseling they might have once had does not solve the problems going forward. Now, the travel, I'm going to address the last my last 30 seconds on the travel. It was raised before the trial, the initial trial in the trial court in the statements of position. It was raised. And in the request to not alienate it was raised several different times in this case. All of the issues that go into requesting international travel were present, it's, it's not, it's not something new, or a huge modification, it's something that needed clarification. It needed the trial court to enter in order so this court could then determine whether that was an abuse of discretion or reasonable my time is up and I thank you for listening to me. Thank you counsel just to show or justice cage. Do you have any final questions? No, thank you. No, final questions. Thank you. Well, counsel, obviously, we'll take the matter under advisement and we will issue an order due course.